IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
LEXINGTON

United States of America

    v.                            Case No. 5:05-cr-111

Chalmer C. Hayes

OPINION AND ORDER

The defendant has been indicted in the Eastern District of Kentucky on one count of solicitation of a crime of violence in violation of 18 U.S.C. § 373 (Count 1), the crime of violence being soliciting, inducing or endeavoring to persuade another to kill a federal district judge on account of her performance of official duties in violation of 18 U.S.C. §§ 1111 and 1114.  Defendant is also charged with one count of threatening to assault and murder a federal district judge with the intent to retaliate against the judge on account of her performance of her official duties in violation of 18 U.S.C. § 115(a)(1)(B) (Count 2).

On August 26, 2005, this court entered an order referring defendant for a mental evaluation of his competency to stand trial. On November 28, 2005, this court received a report from Dr. Christine Scronce, a forensic psychologist, in which Dr. Scronce expressed the opinion that defendant is presently incompetent to stand trial, but that it is possible that defendant could be restored to competency with appropriate medication.  At a hearing held on December 22, 2005, this court found that defendant was incompetent to stand trial, and committed the defendant to the custody of the attorney general for a period of four months pursuant to 18 U.S.C. § 4241(d) for treatment with the goal of restoring him to competency.

On April 20, 2006, this court received a letter from a staff attorney at the U.S. Medical Center for Federal Prisoners, Springfield, Missouri. This letter indicated that defendant's treating physicians, Dr. Lea Ann Preston, a psychologist, and Dr. Robert Sarrazin, a psychiatrist, had concluded that defendant requires treatment with antipsychotic medication to restore his competency to stand trial, but that defendant had refused such treatment.

On June 26, 2006, this court held a hearing on the government's motion for involuntary medication pursuant to Sell v. United States, 539 U.S. 166 (2003). Drs. Preston and Sarrazin, defense counsel and defendant attended the hearing by way of video conferencing from the institution in Springfield, Missouri, and Drs. Preston and Sarrazin testified at the hearing.

The court first addresses the issue of whether an order for involuntary medication would be appropriate for some other reason. Under Washington v. Harper, 494 U.S. 210 (1990), a prison inmate may be treated with antipsychotic drugs against his will if the inmate is dangerous to himself or others and the treatment is in the inmate's medical interest. Id. at 227. In this case, both Dr. Preston and Dr. Sarrazin testified that defendant poses no danger to himself or to others in his current environment. The court finds that the defendant poses no danger to himself or to others in the institution, and an order of involuntary medication is not warranted under Harper.

The Supreme Court also indicated in Sell that the court should consider whether involuntary medication is necessary to treat a

2

defendant who is gravely ill.  <u>Sell</u>, 539 U.S. at 181-82.  Here, Dr. Sarrazin testified that the lack of antipsychotic medication posed no threat to defendant's general physical health.  While he stated that antipsychotic medication was medically appropriate in defendant's case to treat defendant's mental illness, which will progressively worsen over time, the court heard no testimony which would support a finding that defendant's mental illness is currently sufficiently serious to warrant classifying him as "gravely ill" mentally or physically.  Accordingly, the court concludes that this is an appropriate case for consideration of forced medication under <u>Sell</u>.

The Supreme Court in <u>Sell</u> set forth four factors which must be considered in deciding whether to order involuntary medication of a defendant with the purpose of restoring him to competency to stand trial.  The government may involuntarily medicate a mentally ill defendant to render him competent for trial if: (1) there are important governmental interests in trying the individual; (2) the treatment will significantly further those interests; (3) the treatment is necessary to further those interests, considering any less intrusive alternatives; and (4) the treatment is medically appropriate.  <u>See</u> <u>Sell</u>, 539 U.S. at 180-81.  Courts have held that the government bears the burden of proving by clear and convincing evidence that these standards have been satisfied.  <u>See</u> <u>United States v. Bradley</u>, 417 F.3d 1107, 1114 (10th Cir. 2005); <u>United States v. Gomes</u>, 387 F.3d 157, 160 (2nd Cir. 2004).  This court will apply the clear and convincing standard in this case.

In regard to the first factor, the Supreme Court has recognized that the government has an important interest in

3

bringing to trial an individual accused of a serious crime. <u>Sell</u>, 539 U.S. at 180.   Here, defendant is charged with two serious felony offenses.   The offense in Count 1 carries a possible maximum term of twenty years incarceration, and the offense in Count 2 carries a possible maximum term of ten years incarceration.   The alleged victim of the offense is a federal judge.   In <u>United States v. Evans</u>, 404 F.3d 227, 238 (4th Cir. 2005), the court held that threatening to murder a federal judge under § 115(a)(1)(B) was a serious offense, and that the government had an important interest in trying a defendant charged with a felony carrying a maximum punishment of ten years imprisonment.   Defendant is charged with threatening to murder a federal judge under § 115(a)(1)(B), and is also charged with another offense carrying a maximum term of imprisonment of twenty years.   The court finds that the offenses charged in this case are serious offenses.

The Supreme Court indicated that special circumstances may lessen the importance of the government's interest. <u>Sell</u>, 539 U.S. at 180.   The Court noted that the possibility that the defendant might suffer lengthy civil commitment might diminish the risks that ordinarily attach to freeing without punishment one who has committed a serious crime, or that a defendant may have already been detained a substantial period of time pending determination of competency.   <u>Id</u>.  However, the Court further stated that the "Government has a substantial interest in timely prosecution" and that the potential for future confinement through civil commitment "affects, but does not totally undermine, the strength of the need for prosecution."   <u>Id</u>.

Under Kentucky law, involuntary hospitalization of a mentally

4

ill person requires a showing that the person presents a danger or threat of danger to self, family or others as a result of the mental illness, that the person can reasonably benefit from treatment, and that hospitalization is the least restrictive alternative mode of treatment presently available. KRS § 202A.026. In this case, Drs. Preston and Sarrazin have not evaluated defendant to determine whether defendant presents a danger to himself or to others outside the institutional setting, or whether he would be a candidate for civil commitment. There is no evidence before the court indicating that civil commitment would be a possibility in the defendant's case. See Bradley, 417 F.3d at 1116-1117 (where defendant was not evaluated for risk to persons or property outside of the facility, record did not support the proposition that defendant would be a candidate for civil commitment).

The second circumstance mentioned by the Supreme Court is also not a factor in this case. Defendant has been confined for less than a year, and he is facing a sentence of incarceration of up to twenty years. Thus, any period of confinement attributable to a competency determination in this case is insignificant compared to the possible sentence defendant is facing. The court finds that no special circumstances have been shown to exist in this case which would undermine the interests of the government in proceeding with the prosecution in this case, and that the first Sell factor has been met in this case.

The second factor requires a showing that the involuntary medication will significantly further the government's interests. Sell, 539 U.S. at 181. The court must find that "administration of

5

the drugs is substantially likely to render the defendant competent to stand trial" and that "administration of the drugs is substantially unlikely to have side effects that will interfere significantly with the defendant's ability to assist counsel in conducting a trial defense[.]" Id.

Dr. Preston testified that most individuals who are treated with antipsychotic medications respond favorably to treatment, and that the success rate for restoring individuals to competency at the institution is between seventy-six and eighty percent. She further testified that the antipsychotic medications are unlikely to have side effects which would interfere with defendant's ability to assist counsel, as most side effects of the medication are not severe enough to pose a problem. She stated that the medication was likely to improve defendant's ability to assist counsel.

Dr. Sarrazin testified that he agreed with Dr. Preston's assessment that the antipsychotic medication was substantially likely to restore defendant to competency. He stated that while in private practice prior to his employment at the institution, he achieved a seventy-five percent success rate using antipsychotic medications to assist patients in living independently. He further testified that while there are potential side effects, those would not impact defendant's ability to consult with counsel. He stated that side effects such as problems with sedation could be addressed by modifying the dose of the medication, the time of day the medication is administered, or the type of medication.

The court accepts the above testimony, and finds that the evidence shows that the proposed treatment is substantially likely to render the defendant competent to stand trial, and that it is

substantially unlikely to have side effects that will interfere significantly with the defendant's ability to assist counsel in conducting his defense.

The third factor requires the government to show that involuntary medication is necessary to further the government's interests and that any alternative, less intrusive treatments are unlikely to achieve substantially the same results. Sell, 539 U.S. at 181.  The court must also consider whether less intrusive means for administering the drugs, such as a court order to the defendant backed by the contempt power, would satisfy the government's interests.

Dr. Preston testified that defendant's diagnosis was Delusional Disorder, Mixed Type.  This is a psychotic disorder which causes defendant to have grandiose beliefs and feelings of persecution.  She testified that antipsychotic medication was appropriate to treat this condition.  She also testified that alternative treatments, such as individual psychotherapy or competency education, would not be effective in addressing defendant's delusional beliefs.  She stated that defendant's deficits were not related to lack of knowledge.  She further testified that when she tried therapy challenging defendant's delusional beliefs, she was met with anger and resistence.  She stated that it was unlikely that defendant would agree to take medication.

Dr. Sarrazin testified that the best treatment for defendant's condition is antipsychotic medication, and that other treatments such as psychotherapy or group therapy are unlikely to deal with defendant's delusions.  He also testified that antidepressants were

7

not indicated because defendant is not depressed. Dr. Sarrazin testified that defendant does not believe that he has a mental illness. He stated that such denial is a component of defendant's mental illness, and that defendant became angry when he challenged defendant's delusions and recommended medication. He testified that it is unlikely that defendant will agree to medication.

The court finds that the government has proved that involuntary medication is necessary to further the government's interests and that any alternative, less intrusive treatments are unlikely to achieve substantially the same results.

The court also finds that less intrusive means of compulsion are not likely to succeed in this case. Defendant has been diagnosed as suffering from delusional thinking, including grandiose beliefs and feelings of persecution. He has indicated that he does not have confidence in the government psychiatrists. He has stated that he might follow the advice of a psychiatrist other than Dr. Sarrazin or a non-government psychiatrist to take oral medication. However, Dr. Preston testified that this was unlikely, as defendant has denied that he has a mental illness. Dr. Sarazin also stated that it was unlikely that defendant will agree to take the medication even if he is interviewed by another psychiatrist.

In light of defendant's delusional beliefs, it is highly unlikely that an order from this court, backed by the contempt power, would be effective in this case. There is no meaningful sanction the court could impose for violation of such an order. Further, the record, including the fact that the alleged victim in this case is a federal judge and defendant's distrust of government

8

psychiatrists, indicates that defendant would not comply with a court order.  The third <u>Sell</u> factor is satisfied in this case.

The fourth factor requires the government to prove that administration of the drugs is medically appropriate and in the defendant's best medical interest in light of his medical condition.  Dr. Sarrazin testified that defendant's delusional disorder is a psychotic disorder and a serious mental illness.  He stated that the use of antipsychotic medication is the most helpful treatment for this condition, and that it would be in defendant's best medical interest to take this medication even if he were not facing criminal charges.  He testified that the goal of treatment is to improve interaction and socialization with others, and to eliminate defendant's grandiose and persecution delusions.

Dr. Sarrazin proposed a treatment plan which would include the use of second generation medications such as risperidone or first generation drugs such as haloperidol.  He stated that haloperidol comes in the form of both short and long-term injections, while risperidone injections are long-term.   He testified that if defendant refuses oral medication, it may be preferable to use the short-term haloperidol injection, because it would be easier to switch to another medication if an adverse reacion occurs.  He stated that if defendant still refused to take oral medication after the first injection, then he would be given a long-term injection lasting three to four weeks.  He stated that hand and foot restraints would be used to administer the injection if needed.  Dr. Sarrazin and Dr. Preston indicated that defendant would be evaluated toward the conclusion of the four-month treatment period, and that an additional four months might be

9

requested.  Dr. Preston stated that patients are usually restored to competency within eight months.

Dr. Sarrazin testified that possible side effects of the medications included lightheadedness, stomach upset, and headaches. Other side effects include stiffness and akathisia, or abnormal movements.  He stated that high body temperature, stiffness, muscle breakdown and kidney problems are rare side effects, but that the doctors monitor for them.  He also stated that some medications result in an elevation of blood glucose levels, causing diabetes, and that systems are in place to monitor for this as well.  Dr. Sarrazin testified that the institution had nursing staff on duty around the clock seven days a week, and that the medical and mental health staff were on call to monitor the patients' condition and intervene if there are side effects.  He stated that these drugs are safe enough that they are also used in an outpatient setting. He also stated that these medications are routinely prescribed for patients over the age of fifty-five.  He stated that most patients become tolerant to the side effects within a short time.  He stated that treatment would begin with a low dosage of the medication, and that the dosage would then be increased.

Dr. Sarrazin further testified that he was familiar with defendant's overall physical condition.  He noted that defendant has a variety of medical conditions, including coronary artery disease, which required the insertion of stents, pulmonary disease, high blood pressure, hyperlipidemia, and Type II diabetes mellitus. He stated that defendant underwent an MRI at the institution, and has been examined by a neurologist and an ophthalmologist.  He stated that defendant's other conditions, including his diabetes,

10

would be monitored by the staff during treatment. Dr. Sarrazin noted that he was aware of the medications which defendant takes for these various conditions, and indicated that the dosage and type of antipsychotic medications could be adjusted to take into account any side effects or drug interactions. He also testified that antipsychotic medications usually don't pose significant risks with other medications or conditions, and that the institution's pharmacy assisted the doctors in pinpointing possible drug interactions. He stated that patients with more severe medical conditions than defendant's have been safely treated with anti-psychotic medications.

The court finds that the evidence establishes that the administration of antipsychotic drugs is medically appropriate and in the defendant's best medical interest in light of his medical condition. The court finds that defendant's physicians have carefully considered the benefits and risks for defendant's proposed treatment. The evidence demonstrates that the proposed treatment is medically appropriate, taking into account defendant's mental illness and other medical conditions, that the medication is unlikely to have severe side effects, and that any side effects that do occur will be adequately monitored and addressed as part of the proposed treatment plan. The fourth Sell standard has been satisfied in this case.

The court finds that the government has proved by clear and convincing evidence that the four Sell factors have been met in this case. The court grants the government's motion to have defendant medicated involuntarily to render him competent to stand trial. The court orders that the staff at the U.S. Medical Center

11

advise the defendant of the court's order and explain to him the potential side effects of the oral and injected medications, and the advantages of taking oral medication.  The medical personnel treating defendant shall first request that defendant take the medication orally before each and every administration of medication by injection.  If defendant does not agree to take medication orally, the medical personnel are authorized to administer medication by injection over defendant's objection.

The court finds that there is a substantial probability that, with medication and an additional period of hospitalization, defendant's condition will improve such that he will attain the capacity to permit the trial to proceed.  The court hereby continues defendant's commitment pursuant to 18 U.S.C. §4241(d)(2)(A) for an additional period of four months.  At the end of this period, a report shall be filed with the court detailing the results of the treatment.  The court further orders pursuant to 18 U.S.C. §4242(a) that, if and when the medical staff is satisfied that defendant's mental condition has been restored to the point that it is possible to reasonably examine him on the issue of his sanity at the time of the offense, a psychiatric and psychological examination of the defendant shall be conducted, and a report on the issue of the defendant's sanity at the time of the offense shall be filed with the court pursuant to 18 U.S.C. §4247(b) and (c).

Date: June 27, 2006          _____s\James L. Graham_____
                             James L. Graham
                             United States District Judge